## WILSON *against* THE UNITED INSURANCE COMPANY.

THIS was an action on a policy of insurance, tried before Mr. Justice Spencer, at the *New-York* sittings, in *November,* 1815, where a verdict was taken for the plaintiff, subject to the opinion of the court, on a case to be made, with liberty for either party to turn the same into a special verdict, subject also to an adjustment as to the amount, upon such principles as the court should direct.

The policy, which was dated *February* 11th, 1813, was on the cargo of the *American* ship *Hibernia, Delano* master, at and

Insurance on goods on board of an *American* ship, from *Norfolk* to *Cadiz :* " Warranted free from *British* and *American* capture and detention, but the usual sea-risks to continue, both during capture, and after liberation." The vessel having on board a *British* license was stopped at the mouth of the *Chesapeake* by a *British* blockading squadron, and ordered back to *Norfolk,* under pain of capture and condemnation; she accordingly returned up the *Chesapeake,* and afterwards gave up the voyage. Held, that it was a loss by detention of the *British,* within the meaning of the warranty.

NEW YORK, from *Norfolk*, in *Virginia.* to *Cadiz.* It was in the usual form
May, 1817 of the printed policies of *New York*, and contained at the foot
WILSON of it the following written memorandum : " Warranted free-
*v* from loss by *British* and *American* capture and detention, but
UNIT. INS. Co. the usual sea and other risks to continue both during capture
and after liberation." The declaration averred, that the vessel,
while proceeding on her voyage, was forcibly, &c. by persons
acting under the authority of the king of *Great Britain*, &c.
" restrained, hindered, and prevented from proceeding upon,
pursuing, and making her said voyage," &c. by reason whereof
the goods, &c. were totally lost. On the 3d of *February*, 1813,
the *Hibernia*, loaded with flour, sailed from *Norfolk* for *Cadiz*,
and reached *Hampton Roads* the 7th day of the same month,
where she found a *British* squadron of four frigates blockading
the mouth of the *Chesapeake.* An officer from the blockading
squadron boarded the *Hibernia*, and having examined her pa-
pers, ordered her back to *Norfolk.* She accordingly returned to
*Norfolk* the next day. The blockade continuing, she remained
at *Norfolk* until the 3d of *March*, when she sailed again from
*Norfolk*, with a neutral brig, in the hope of passing the blocka-
ding squadron, and intending to proceed to *Cadiz.* The *Hi-
bernia* was again boarded by an officer of the blockading squa-
dron, on the 16th of *March*, who endorsed on her papers an
order to return to *Norfolk.* The master hearing that hulks had
been sunk in the channel near *Norfolk*, thought it most prudent
to go to *Port Hood* in *James River*, where the vessel lay until
*November* following, when, to preserve the cargo, it was dis-
charged, and the voyage broken up. The master, who was
examined as a witness, testified, that the enemy did not capture
or detain the *Hibernia*, but only restrained her from proceeding
on her voyage ; that he might have gone with his vessel to any
port he chose, in the *Chesapeake*, or any of its waters, within,
and out of the reach of the blockading squadron ; that when he
sailed from *Norfolk*, he did not know of the blockade, nor until
he came in sight of the blockading squadron ; that the *Hibernia*
was the first vessel turned back by the blockading squadron.
That he had on board of the *Hibernia*, when she sailed from
*Norfolk*, and until the voyage was broken up, an *American* re-
gister, a clearance, bill of health, &c., and a *British* license, on

the face of which the boarding officer made the endorsement, when she attempted to proceed on the voyage the second time. That the license was what is called a *Sidmouth* license, which he believed to be genuine; and was furnished to him by the owners of the ship; and that he showed the license to the officer of the blockading squadron who boarded the *Hibernia*, with a view to her protection. The endorsement on the license was as follows: " In pursuance of orders from the commander in chief, to place the ports in the *Chesapeake* under a rigorous blockade, you are hereby ordered and directed to return into the port from whence you came. Any attempt to violate this order will subject ship and cargo to condemnation. *March* 16th, 1813."

*Colden*, for the plaintiff, contended, 1. That there was no *capture* or *detention* of the *Hibernia*. by *British* or *Americans*, within the language or meaning of the written clause of warranty; it was a *restraint* merely, which being a peril in the policy not excepted by the warranty, the plaintiff was entitled to recover. *Detention*, he said, was a forcible taking into possession or custody, but *restraint* was a mere hindrance by a superior power, from proceeding in the destined course. The *Hibernia* found at the mouth of the *Chesapeake* a force which prevented her from getting out to sea, and proceeding on her voyage to *Cadiz;* but it did not capture or detain her, but left her at liberty to return to *Norfolk*, or to go to any other place within the waters of the *Chesapeake*.

2. But it will be said, she has falsified her warranty of being an *American* ship by having on board a *British* license. This was a mere pass, to permit the vessel to go to a neutral port; and was different from what is called a *Sawyer's* license, granted for the purpose of carrying provisions to the enemy. The counsel proceeded to discuss this question, which he regarded as important, at considerable length; but as the court expressed no opinion upon it, it is thought unnecessary to state the arguments of counsel. He cited 5 *Rob. Adm. Rep.* 10 (*n.*) 1 *Gallis. Rep.* 513. The *Liverpool Packet. Id.* 594. The *Julia.*

*J. T. Irving*, contra, insisted, that the words *detention* and

NEW-YORK,
May, 1817.

WILSON
v.
UNIT. INS. Co.
*Marsh. on Ins.*
508.

*restraint* used in policies of insurance, must be regarded as synonymous terms; and that there was no ground for the distinction attempted to be maintained by the plaintiff's counsel. An embargo is a *detention* within the policy.* So, where a vessel is arrested by the government, from any supposed necessity, it is a detention. To create a loss for which insurers are answerable, it must be by a peril acting immediately, not circuitously, or

† *Hadkinson v. Robinson,* 3 Bos. and Pull. 388.

collaterally, upon the subject insured·† Where the insurer takes upon himself the risk of capture, the fear of the assured to encounter that risk will excuse the insurer from being answerable

‡ *Lubbock v. Rowcroft,* 5 Esp, Rep. 50 *Blackenhagen v. London Ass. Comp.* 1 Campb. Rep. 454.

for the loss of the voyage.‡ But the present case is much stronger; the assured, by his warranty, took the risk of *British* capture; yet, because he dared not, or would not, encounter that risk, he seeks to make the defendants answerable for the loss of the voyage.

§ 1 *Caines,* 549.

On the *second* point, he contended, that the *Hibernia,* having an enemy's license, had identified herself with that enemy, and thereby falsified her *American* character.§ It is not lawful for a citizen of the *United States* to use the license or protection of

‖ 2 *Dallas,* 10. 4 *Rob. Adm. Rep.* 11. *Vigilantia,* 1 *Gallison's Rep.* 594. *Julia, Wheaton on' Captures,* 165. 168.

the public enemy of his country.‖

*S. Jones,* Jun., on the same side, was stopped by the court.

*D. B. Ogden,* in reply, said, that policies of insurance, like all other instruments, must be construed so as to give meaning and effect to the whole. If *restraint* was synonymous with detention, it was perfectly redundant and useless. Detention implies that the thing detained is kept within the power of the party detaining. Restraint may exist, where the thing is out of his custody or immediate power. The warranty is against capture *and* detention, not against capture *or* detention. Again; the sea risks are to continue during capture, and after liberation.

*Per Curiam.* There is no difference between detention and restraint in this case. The ship was detained and restrained by the *British* from proceeding on the voyage insured. Being warranted free from such detention by the assured, the plaintiff cannot recover. Had the vessel been captured, he could not

have recovered; yet he seeks to recover, because he did not choose to proceed for *fear* of capture and condemnation.

NEW-YORK,
May, 1817.

Judgment for the defendants.